**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-5210**

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

       v.

OMAR M. NIJIM,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (4:11-cr-00012-H-5)

Submitted:  October 31, 2012         Decided:  November 8, 2012

Before MOTZ and GREGORY, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Jason R. Harris, WELCH AND HARRIS, LLP, Jacksonville, North Carolina, for Appellant.   Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Yvonne V. Watford-McKinney, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Omar Nijim was convicted of conspiracy to traffic in contraband cigarettes, in violation of 18 U.S.C. § 371 (2006), and was sentenced to thirty-three months in prison. Nijim now appeals, raising three issues. We affirm.

I

As part of an investigation into transactions involving contraband cigarettes, Special Agent Michael Anderson of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") operated an undercover warehouse in North Carolina. Cigarettes -- allegedly illegally obtained -- were stored at the warehouse and sold to various individuals. Over the course of the investigation, over one million cartons of cigarettes were sold for approximately $21 million.

In November 2009, Anderson met with one of his customers, Nafiz Mustafa, to prepare for a shipment of cigarettes to New Jersey. In accordance with the plan, Mustafa flew to New York on December 1. Iyas Leqyana picked him up in a minivan containing money to be used to pay for the cigarettes. Nijim joined them. They dropped off Leqyana and drove to a rest area in New Jersey, where they were to take possession of the cigarettes.

2

ATF Special Agent Edwin Killette, who was driving a Penske truck containing 9540 cartons of contraband cigarettes, arrived at the rest area, as did Anderson, who had flown in from North Carolina. Mustafa handed Anderson a bag containing $55,000 in cash. Nijim then drove the Penske truck to a storage room, followed by Mustafa in the minivan. Leqyana joined them, and the three men unloaded the truck. Nijim and Mustafa returned to the rest area. Mustafa gave Anderson an additional $20,000 and agreed to pay him the balance due upon their return to North Carolina. Mustafa and Nijim left in the minivan, which was registered to Nijim.

A similar transaction occurred on January 13, 2011. Mustafa flew to New York, Leqyana picked him up in the minivan, they were joined by Nijim, and they drove to the rest area. Killette drove to the rest area in a Penske truck containing 9000 cartons of contraband cigarettes. Anderson again arrived separately. After Killette exited the truck, Nijim got in and drove to the storage room, with Leqyana following in the minivan. After unloading the cigarettes, they returned to the rest area, where Mustafa gave Anderson $102,000 in cash as partial payment for the cigarettes.

According to Nijim's presentence investigation report ("PSR"), his base offense level was 20 because the amount of loss was $500,580. See U.S. Sentencing Guidelines Manual

3

("USSG") §§ 2E4.1(a)(2), 2T4.1(H) (2011). There were no adjustments, and the total offense level accordingly was 20. Nijim's criminal history category was I, and his Guidelines range was 33-41 months. The district court overruled Nijim's claims that he should have received a reduction in his offense level based on his limited role in the offense, USSG § 3B1.2, and that the amount of loss was less than $400,000. The court sentenced Nijim to thirty-three months in prison.

II

Nijim first argues that the district court erroneously refused to instruct the jury on N.J. Stat. Ann. § 54:40A-16. The statute generally prohibits wholesale and retail dealers from accepting deliveries of cigarettes that do not bear proper New Jersey tax stamps, which signify the payment of applicable New Jersey excise taxes. The statute provides an exception to this prohibition:

> The director [of the New Jersey Division of Taxation] may, however, . . . authorize wholesale dealers and retail dealers to acquire and have in their possession cigarettes bearing cigarette revenue stamps of other states, provided such cigarettes are intended for sale or other disposition in those states.

N.J. Stat. Ann. § 54:40A-16.

Nijim contends that the cigarettes involved in the December 1 and January 13 transactions, which bore no tax

4

stamps, were intended for distribution in one of the three states that do not require the affixation of tax stamps to cigarettes. Under the above provision, he argues, possession of unstamped cigarettes would be legal if they were destined for any of those states. An instruction on the statute would, if the jury believed that he possessed the cigarettes for transfer to a non-tax state, require acquittal.

The decision to give or refuse to give a jury instruction is reviewed for abuse of discretion. United States v. Sarwari, 669 F.3d 401, 410-11 (4th Cir. 2012). "A court's failure to give a proposed instruction does not constitute reversible error unless it dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." Id. at 411 (internal quotation marks omitted).

We conclude that the district court did not abuse its discretion in refusing the requested instruction because the statutory exception was inapplicable. Testimony at trial established that Nijim was, during the relevant period, employed at two stores: one that sold Disney products and one that sold clothing. Neither Nijim nor either store was a licensed stamping agent, nor had he or either store received the authorization contemplated by the statute. Further, Nijim

5

denied having worked for a cigarette dealer, wholesaler, or manufacturer. The statute simply was inapplicable.

III

Nijim next contends that, pursuant to USSG § 3B1.2, he should have received a reduction in his offense level based on his role in the offense. To qualify for a reduction under the Guideline, a defendant must show that he was a "minimal" or "minor" participant in the offense. USSG § 3B1.2; United States v. Akinkoye, 185 F.3d 192, 201-02 (4th Cir. 1999). In deciding whether a defendant's role was minimal or minor, the "critical inquiry is . . . not just whether the defendant has done fewer bad acts than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." United States v Pratt, 239 F.3d 640, 646 (4th Cir. 2001) (internal quotation marks omitted).

We hold that the district court did not abuse its discretion in denying the reduction because Nijim's role in the offense was neither minimal nor minor. On two occasions, he transported coconspirators, cigarettes, and cash to pay for the cigarettes in his minivan. He also unloaded contraband cigarettes and placed them in the storage room. All this establishes his material role in the offense.

6

IV

Finally, Nijim claims that the amount of loss was incorrectly calculated; his position is that the proper amount was less than $400,000. Testimony at trial established that: the December 1 delivery involved 9540 cartons of contraband cigarettes; the January 13 shipment involved 9000 cartons; and the New Jersey excise tax on a carton of cigarettes was $27. Accordingly, the amount of loss was properly determined to be $500,580.20.

V

We therefore affirm Nijim's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED